**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | |
| JOHN PETER PAUL AND MARIE ELIZABETH PAUL, | Civil Case No. 12-cv-07855 (FLW) <br> Bankr. Case No. 11-31653 (RTL) |
| Debtors | **OPINION** |

**WOLFSON, United States District Judge:**

Appellants John Peter and Marie Elizabeth Paul (collectively, "Debtors") appeal from the decision of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"), denying Debtors' motion to reopen their bankruptcy case to seek return of funds in a bank account levied upon by Chase Bank USA, N.A. ("Chase") prior to the filing of the bankruptcy petition. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons that follow, the Court concludes that the Bankruptcy Court did not abuse its discretion in denying the motion to reopen Debtors' case and affirms the decision of the Bankruptcy Court.

I.  **BACKGROUND & PROCEDURAL HISTORY**

The following facts and procedural history underlie the Bankruptcy Court's decision.[1] On March 15, 2011, a final judgment by default was entered in the Superior Court of New Jersey ("Superior Court") against Debtors and in favor of Chase in the amount of $22,389.92. Bankr. Dkt. 15-3. A writ of execution to levy upon Debtors'

---

[1] Relevant facts are taken from the record and are undisputed on this appeal.

account at Sovereign Bank was issued on March 31, 2011, and mailed to the Ocean County Sheriff's Office ("Sheriff's Office") on April 6, 2011. See Bankr. Dkt. 15-4. On April 25, 2011, the Sheriff's Office levied upon funds in Debtors' account at Sovereign Bank in the amount of the judgment (the "Funds"), and Sovereign Bank placed a hold on debtors' funds in their account in the amount of $22,389.92. Bankr. Dkt. 15-5. Chase then filed a motion to turnover levied funds on June 16, 2011; the turnover order was entered on July 8, 2011, and mailed to all parties on July 13, 2011. Bankr. Dkt. 15-6, 15-7.

However, on July 20, 2011, before the Sheriff's Office executed the turnover order, Debtors filed their Chapter 7 bankruptcy petition.[2] Bankr. Dkt. No. 1, see also 13-1 ¶ 2, 6, 9 (Debtors' Cert. in Support of Motion to Reopen). On November 10, 2011 Debtors were discharged from bankruptcy, without the Funds being considered part of the bankruptcy estate, and on December 22, 2011 the case was closed by final decree. Bankr. Dkt. No. 10, 12. Although not specifically pled, according to Debtors' brief on appeal, the Funds were paid to Chase. Debtors' Br., 3.

On October 10, 2012, approximately 11 months after the discharge of their case, Debtors filed a motion to reopen the case in the Bankruptcy Court. Bankr. Dkt. 13. The basis of Debtors' motion was to seek return of the Funds on the basis that actual turnover of the Funds occurred post-petition, and thus the Funds were property of Debtors that should have been included in their bankruptcy estate. See generally Bankr. Dkt. 13. Following a November 5, 2012 hearing, the Bankruptcy Court denied the motion without

---

[2]  In some of Debtors' papers on appeal, reference is made to a Chapter 11 filing. Review of the underlying Bankruptcy Court record, however, reveals that in the instant matter Debtors' filed a Chapter 7 bankruptcy petition.

2

an opinion, but on the docket cited the decision of In re Flores, No. 10-34546, 2011 WL 44910 (D.N.J. Jan. 6, 2011). Bankr. Dkt. 20-1. Debtors now appeal contending that the Bankruptcy Court erred in not permitting Debtors to reopen their bankruptcy case in order to seek return of the Funds from Chase.

## II. STANDARD OF REVIEW

When sitting as an appellate court reviewing a decision of the bankruptcy court, a district court "'review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.'" In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005) (quoting In re Trans World Airlines, Inc., 145 F.3d 124, 130–31 (3d Cir. 1998)). Mixed findings of fact and conclusions of law must be separately analyzed, and the applicable standards—"clearly erroneous" or de novo—must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). "The district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

The decision to reopen a bankruptcy matter under 11 U.S.C. § 350(b) is reviewed for abuse of discretion. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997). Here, however, the sole issue presented in Debtors' motion concerns the effect under New Jersey law of the entry of a turnover order. Thus, because the Bankruptcy Court's

3

decision to deny the reopening of Debtors' case was based on a purely legal issue,[3] with no facts in dispute on this appeal, this Court reviews de novo the Bankruptcy Court's conclusion regarding New Jersey law to determine whether the Bankruptcy Court abused its discretion in denying Debtors' motion.

### III. DISCUSSION

Debtors seek to reopen their bankruptcy case based on their contention that the turnover order did not transfer title to the Funds, and thus the Funds were only subject to an avoidable lien on the date of filing of the bankruptcy petitions. Specifically, Debtors argue that: (1) the turnover order was not a self-executing transfer of title because the order was silent in that regard, and therefore (2) the Funds should have been included as part of the bankruptcy estate when the bankruptcy petition was filed. Debtor's Br. 6-9. Chase argues in opposition that Debtors were completely divested of an interest in the levied Funds upon the issuance and entry of the turnover order. Chase Opp. 11. As discussed below, I conclude that Debtors' appeal is without merit.

The core of Debtors' claims on appeal turns on the operation and effect of certain post-judgment remedies, and in particular, the turnover order. Under New Jersey law,[4] the turnover order is a mechanism that "direct[s] a bank holding the debtor's funds to pay those funds over to creditors rather than to the debtor." Flores, 2011 WL 44910, at *2 (citing N.J.S.A. 2A:17-63); Sylvan Equip. Rental Corp. v. C. Washington & Son, Inc.,

---

[3] The Bankruptcy Court did not base its decision on Debtors' delay in seeking relief or any other equitable basis that might have been sufficient grounds to deny Debtors' application. Rather, the Bankruptcy Court appears to have relied solely on the decision in Flores.

[4] The parties agree that New Jersey law governs Debtors' claim. Accord Flores, 2011 WL 44910, at *2 ("In determining the extent of a debtor's legal or equitable interests in property, bankruptcy courts look to state law." (citing United States v. Butner, 440 U.S. 48 (1979); In re Brannon, 476 F.3d 170 (3d Cir. 2007))).

4

292 N.J. Super. 568, 571 (Law Div. 1995)). The prerequisite to the entry of a turnover order is the issuance of a writ of execution for the purpose of a levy. N.J.S.A. 2A:18-27; Sylvan Equip. Rental Corp., 292 N.J. Super. at 571.[5] A turnover order is granted when "there has been a levy on a 'debt due' [to] a 'judgment debtor' and the 'garnishee' admits the 'debt.'" PRA III, LLC. v. Capital One, N.A., No. L-1424-07, 2009 WL 2176656, at *9 (N.J. Super. Ct. App. Div. 2009) (quoting N.J.S.A. 2A:17-63). In this case, the Funds in the bank account at Sovereign Bank are the "debt due," the Debtors are the account holders as they are the "judgment debtors," and the "garnishee" is Sovereign Bank. See id. at *9.

Debtors do not dispute the operation of New Jersey's post-judgment remedies other than to claim that the entry of a turnover order does not automatically transfer title of a garnished debt, unless the order explicitly contains such language. In that connection, Debtors rely on PRA III, for the proposition that a turnover order must explicitly state, in addition to ordering turnover, that title is to be transferred. However, Debtors' reliance on PRA III is misplaced. In PRA III, a creditor sought to enforce two earlier judgments against an individual debtor by obtaining a turnover order against levied funds in a corporate bank account allegedly connected to the individual debtor's funds, notwithstanding that the corporation was not a named defendant in the underlying judgments. PRA III, 2009 WL 2176656, at *1, *9. The parties disagreed as to whether

---

[5] "Once the levy is made on a bank account . . . the funds levied are technically no longer the bank's or debtor's to control. They are under the dominion of a court officer." Id. at 573-74. A judgment lien becomes effective upon the execution of a levy by the Sheriff, but transfer of title relates back to the date when the writ of execution was delivered. Kieffer v. New Century Fin. Servs., Inc., CIV.A. 10-3938 SRC, 2012 WL 1853895 (D.N.J. May 21, 2012) (citing Vineland Sav. & Loan Ass'n v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950)).

5

the corporation was properly a judgment debtor, as well as whether the garnishee bank admitted to the debt; the trial court denied the corporation's motions to vacate the turnover orders. Id. at *1, *4-*5. On appeal, the PRA III court rejected the creditor's argument that the garnishment was proper, holding that the creditor sought to levy on the account of another (the corporation) without any determination that the corporate account holder was liable for the debts of the individual judgment debtor. Id. at *13. Specifically relevant to its holding, the PRA III court noted that the moving papers failed to include the relevant factual and legal issues, the applications neglected to mention funds to be turned over, and the orders overall were vague and unclear. Id. at *9, *13. Thus, the court concluded that because the turnover motions and orders were imprecise, the bank would be unable to positively determine which accounts to levy upon; in other words, the bank would have found it difficult to comply with the orders. Id. at *13.

The PRA III court therefore determined that the turnover proceeding significantly deviated from a standard turnover proceeding, i.e., when "one has a judgment against a debtor and levies on a bank account owned by the debtor and receives a turnover order and serves that order on the bank, that the bank will be liable if it does not comply with that order." Id. at *13. Thus, the central problems the court faced in PRA III turned on (1) the absence of any determination that the account holder was liable for the debts of the debtor, and (2) imprecise turnover orders that would have made it difficult for the garnishee bank to comply. Id. In this case, however, Debtors do not raise the issues implicated in PRA III either concerning the identity of the debtors vis-à-vis the account at Sovereign Bank, or any other related issue regarding the adequacy of the information received by Sovereign Bank via the turnover order in this case. Indeed, these are not at

issue – the Debtors' identity and the identity of their account is clear from the turnover order, and the order left no ambiguity as to its terms. Rather, Debtors' argument turns on whether the entry of a turnover order effects transfer of title of the subject funds. In sum, PRA III, is simply inapposite to Debtors' claim on appeal.

Debtors' remaining argument turns on statutory construction. Debtors argue that the relevant New Jersey statute, N.J.S.A. 2A:17-63, is silent as to when title transfers under a turnover order, and thus, to make title pass when the order is entered, the order must so state.[6] See Debtors Br. 5-6. But nothing in the New Jersey statute requires that a turnover order explicitly provide for transfer of title in order to divest a debtor of an interest in levied assets. N.J.S.A. 2A:17-63. Moreover, contrary to Debtors' suggestion, New Jersey courts have not taken the position that a properly issued turnover is, in and of itself, insufficient to effect a transfer of title, without any additional provision in the order. See Flores, 2011 WL 44910, at *2 (collecting New Jersey cases, for example, Sylvan Equip. Rental Corp., 292 N.J. Super. at 573-74); see also Sylvan Equip. Rental Corp., 292 N.J. Super. at 573-74 ("Once the levy is made on a bank account . . . the funds levied are technically no longer the bank's or debtor's to control."); Matter of Ramco Am. Int'l, Inc., 754 F.2d 130, 132 (3d Cir. 1985) ("[A]lthough a transfer of interest does not occur

---

[6] The turnover statute provides:

> After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just.

N.J.S.A. 2A:17-63.

7

until levy is made, once levy is made the effective date of the transfer relates back to the date the writ of execution was delivered to the levying authority." (citing Walton v. Hillier, 128 N.J.L. 119 (1942)).

The court in Flores was presented with a virtually identical issue regarding the operation of turnover orders in New Jersey.[7] After reviewing New Jersey law, the Flores court held that the entry of a turnover order has the effect of divesting a debtor of an interest in levied funds and preventing the levied funds from becoming property of the bankruptcy estate.[8] Flores, 2011 WL 44910, at *3. Because the turnover proceeding "marks the final judicial determination of the debtor's interest . . . and provides the debtor and the bank a final opportunity to object to the levy and preserve whatever equitable rights remain," the Flores court determined that after the turnover order is entered, the "garnishee-bank no longer owes money to the judgment debtor-account holder." Id. at *2.

Applied to the present case, Debtors' interest in the Funds was divested upon the entry of the turnover order on July 8, 2011, 12 days before the Debtors filed their bankruptcy petition. Flores, 2011 WL 44910, at *2 (citing Sylvan Equip. Rental Corp.,

---

[7] Debtors's only response to the Flores holding, which is directly on point, is that the case was wrongly decided. I disagree.

[8] I note further that to require an additional action – i.e., for a creditor to also move for transfer of title of turned over funds after obtaining the turnover order – is not supported by New Jersey's post-judgment statutes or case law. Indeed, taken to its logical end, Debtors' argument would essentially eviscerate turnover orders by requiring a judgment creditor with a valid levy to do something in addition to obtaining a turnover order before the creditor could reach the debtor's funds. Such an interpretation runs counter to any common sense construction of the turnover statute, and thus, the Court rejects Debtors' suggestion that a turnover order must include explicit transfer of title language in order to give full effect to such an order. See, e.g., In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006) ("A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results.").

292 N.J. Super. at 573-74).[9] The entry of the final judgment by default against Debtors in state court, the subsequent levy on the Funds, and the ultimate entry of the turnover order, eliminated Debtors' interest in the Funds prior to the filing of Debtors' bankruptcy petition. In other words, there was no lien or levy on the Funds as of the filing date of Debtors' bankruptcy petition because Debtors had no legal or equitable interest in the Funds; as a result of the entry of the turnover order, Sovereign Bank no long owed money in these accounts to Debtors. Accordingly, the Bankruptcy Court did not err in determining that there was no cause to reopen Debtors' case.

## IV. CONCLUSION

For the reasons set forth above, the Court determines that the pre-petition entry of a turnover order divested Debtors of their interest in the Funds, and thus the Funds were properly not included in the bankruptcy estate. Therefore, the Bankruptcy Court's decision that there was no cause to reopen the case is **AFFIRMED**.

An Order will be entered consistent with this Opinion.

Dated: July 9, 2013        /s/    Freda L. Wolfson
                           Freda L. Wolfson, U.S.D.J.

---

[9] Because title to the Funds was effectively transferred on the date of the entry of the turnover order, when the actual turnover order was executed is not significant. See Flores, 2011 WL 44910, at *3; see also Matter of Ramco Am. Int'l, Inc., 754 F.2d 130, 132 (date of levy relates back to date of writ of execution).